# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**GENNA B. LAABS,**
  *individually, and as representative of a class of participants and beneficiaries of the Faith Technologies Inc. 401(k) Retirement Plan,*

    Plaintiff,

      v.                                 Case No. 20-CV-1534-WCG-SCD

**FAITH TECHNOLOGIES, INC.,**

**BOARD OF DIRECTORS OF
FAITH TECHNOLOGIES, INC.,** and

**JOHN AND JANE DOES 1-30,**

    Defendants.

---

## REPORT AND RECOMMENDATION

---

Genna B. Laabs, a participant in the Faith Technologies Inc. 401(k) Retirement Plan, has filed a proposed class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461, against Faith Technologies, Inc., the Board of Directors of Faith Technologies, Inc., and John and Jane Does 1–30. United States District Judge William C. Griesbach has referred the case to me to address any motions. This report and recommendation addresses the defendants' motion for partial reconsideration of the court's decision on the defendants' motion to dismiss Laabs' complaint. Based on a recent clarification of the law from the Seventh Circuit, I will recommend the court grant the motion for reconsideration, dismiss the complaint in its entirety, and permit Laabs leave to file an amended complaint.

## BACKGROUND

Laabs filed this action in October 2020, asserting five causes of action against the defendants. *See* ECF No. 1. The first two causes of action assert that the defendants breached their duties of loyalty and prudence regarding recordkeeping and administration fees (Count I) and investment management fees (Count II). The next two causes of action assert that the defendants failed to adequately monitor other fiduciaries with respect to the plan's recordkeeping fees (Count III) and investment fees (Count IV). The last cause of action asserts that the defendants engaged in prohibited party-in-interest transactions (Count V).

The defendants moved to dismiss the complaint under Rule 12(b)(6), arguing that each of Laabs' causes of action failed to state a claim according to the pleading standards outlined in *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020), *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), and *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011). *See* ECF No. 9. While that motion was pending, this court issued a decision in *Albert v. Oshkosh Corp.*, No. 20-C-901, 2021 WL 3932029, 2021 U.S. Dist. LEXIS 166750 (E.D. Wis. Sept. 2, 2021), dismissing similar ERISA claims. A few weeks later, the court referred this action to me to issue a report and recommendation on the defendants' motion to dismiss. *See* ECF No. 25. I recommended that the motion be granted in part and denied in part. *See* ECF No. 27. The court subsequently stayed the action because the Supreme Court granted certiorari in *Divane*. *See* ECF No. 33. In January 2022, the Supreme Court vacated *Divane* and remanded the matter to the Seventh Circuit for reconsideration. *See Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022).[1] This court then lifted the stay and invited supplemental briefing on the impact of the *Hughes* decision. *See* ECF No. 34.

---

[1] *Divane* is still pending before the Seventh Circuit on remand, with oral argument scheduled for November.

On August 23, 2022, this court issued a decision and order adopting in part and denying in part my recommendations. *See* ECF No. 38. The court dismissed the prohibited transactions claim, the duty of loyalty claims, and the duty of prudence claim regarding the defendants' alleged failure to disclose certain information. The court, however, determined that the complaint plausibly alleged that the defendants breached the duty of prudence with respect to the plan's recordkeeping and administration fees and investment management fees. The court also declined to dismiss the derivative failure to monitor claims.

A few days later, the Seventh Circuit affirmed this court's dismissal in *Albert*. *See Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022). The defendants then sought reconsideration, arguing that *Albert* provides grounds to reconsider this court's motion to dismiss ruling. *See* ECF No. 46. Judge Griesbach subsequently referred the matter to me in accordance with 28 U.S.C. § 636(b)(1) to issue a report and recommendation concerning any motions that are filed. *See* ECF No. 50.

## LEGAL STANDARD

District courts have broad discretion to revisit their interlocutory orders. *See Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006)). "Under Federal Rule of Civil Procedure 54(b), 'any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *TL Constr. Mgmt., LLC v. City of Green Bay*, No. 19-C-1077, 2020 WL 7698374, 2020 U.S. Dist. LEXIS 242441, at *2 (E.D. Wis. Dec. 28, 2020) (quoting Fed. R. Civ. P. 54(b)). "A court has the power to revisit prior decisions of its own . . . in . . .

3

circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *TL Constr. Mgmt*, 2020 U.S. Dist. LEXIS 242441, at *2 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

Likewise, under the law of the case doctrine, a court may reconsider its prior ruling "if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Birch Hill Real Estate, LLC v. Breslin*, No. 19-C-426, 2019 WL 4278505, 2019 U.S. Dist. LEXIS 154019, at *5 (E.D. Wis. Sept. 10, 2019) (quoting *Santamarina*, 466 F.3d at 571–72). In other words, the law of the case doctrine does not preclude reconsideration if the court "is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." *Birch Hill Real Estate*, 2019 U.S. Dist. LEXIS 154019, at *5 (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997)). "Not to reconsider in such circumstances would condemn the parties to the unedifying prospect of continued litigation when they knew that a possibly critical ruling was in error and, unless it became moot in the course of the proceedings, would compel a reversal of the final judgment at the end of the case." *Birch Hill Real Estate*, 2019 U.S. Dist. LEXIS 154019, at *5 (quoting *Santamarina*, 466 F.3d at 572).

## DISCUSSION

The defendants seek reconsideration in light of *Albert*. According to the defendants, *Albert* clarified the pleading requirements for fiduciary-breach claims and makes clear that the court should dismiss Laabs' remaining claims. Laabs argues that *Albert* does not warrant giving the defendants a second bite at the apple because that decision did not alter ERISA pleading requirements. Alternatively, Laabs maintains that the court's decision would remain the same under *Albert* and, to the extent it wouldn't, she should be permitted leave to submit

4

an amended complaint to supplement her factual allegations. The issue, therefore, is whether the court's ruling on the defendants' motion to dismiss is clearly erroneous in light of *Albert*.

I. **Duty of Prudence Claims**

Laabs asserts that the defendants breached their duty of prudence with respect to recordkeeping and administration fees and investment management fees.

    A. **Recordkeeping and Administration Fees (Count I)**

Laabs argues that the defendants failed to regularly monitor the plan's recordkeeping and administration fees paid to covered service providers, including Prudential Insurance Company of America. Specifically, Laabs alleges that the defendants failed to regularly solicit quotes and/or competitive bids from covered service providers, resulting in the plan paying unreasonable fees for recordkeeping services. For support, Laabs compares publicly available data for the plan with ten allegedly comparable plans that are supposedly prudent when it comes to recordkeeping fees. Based on that comparison, Laabs alleges that the Faith Technologies plan paid unreasonably excessive recordkeeping fees, costing its participants over $800,000.

In *Albert*, the Seventh Circuit affirmed the dismissal of a substantially similar recordkeeping claim. The court held that the recordkeeping claim failed "under [the] precedent that *Hughes* left untouched"—namely, that a failure to regularly solicit quotes or competitive bids from service providers does not, as a matter of law, breach the duty of prudence. *Albert*, 47 F.4th at 579–80 (citing *Divane*, 953 F.3d at 990–91). The court relied primarily on *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), a recent case in which the Sixth Circuit "held that an ERISA plaintiff failed to state a duty of prudence claim where the complaint 'failed to allege that the [recordkeeping] fees were excessive relative to the

5

services rendered.'" *Albert*, 47 F.4th at 580 (quoting *Smith*, 37 F.4th at 1169). The Seventh Circuit further held that the complaint in *Albert* did not provide "'the kind of context that could move this claim from possibility to plausibility' under *Twombly*[2] and *Iqbal*[3]." *Albert*, 47 F.4th at 580 (quoting *Smith*, 37 F.4th at 1169). Nevertheless, the court emphasized "that recordkeeping claims in a future case could survive the 'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss." *Albert*, 47 F.4th at 580 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)).

Like the complaint in *Albert*, the complaint in this case does not provide the necessary context to support a plausible recordkeeping claim. *Compare* the complaint here, ECF No. 1 ¶¶ 88–114, *with* the amended complaint in *Albert*, 20cv901, ECF No. 20 ¶¶ 88–114. The complaint alleges in conclusory fashion that the recordkeeping fees were excessive relative to the services received. *See* ECF No. 1 ¶¶ 35, 39–43, 55, 68–69, 71–72, 74, 79, 87, 111. The complaint describes some of the services offered by recordkeepers—maintaining plan records, tracking participant account balances and investment elections, transaction processing, call center support, participant communications, and trust and custody services—and alleges that the plan here "received a standard package of [recordkeeping] services." *Id.* ¶ 35. Crucially, however, the complaint does not contain any allegations concerning the *specific services* performed by the comparator plans' recordkeepers or any allegations supporting a plausible inference that the plan's recordkeeping services were equivalent to those provided by the comparator plans, *see id.* ¶¶ 67–114. *See Smith*, 37 F.4th at 1169 (affirming the dismissal of a recordkeeping claim because the plaintiff failed to plead "that the services that [the plan's] fee

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[3] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

covers are equivalent to those provided by the plans comprising the average in the industry publication that she cites"). Absent that context, the court is left with only a naked fee-to-fee comparison, which does not permit a reasonable inference that the defendants' process of managing the plan's recordkeeping fees was imprudent. *Albert* therefore makes clear that this court should dismiss Laabs' recordkeeping claim.[4]

B. **Investment Management Fees (Count II)**

Laabs asserts that the defendants also failed to regularly monitor the plan's investment management fees. This claim includes three parts. First, Laabs alleges that the defendants breached their duty of prudence by retaining high-cost actively managed investments. As with the recordkeeping claim, Laabs compares the investment options the plan selected to eighteen allegedly comparable and prudent alternative investment options. Based on that comparison, Laabs alleges the plan's investment options were 520% more expensive than alternative options in the same asset category. She further alleges that the expense ratios of the plan's investment options were more expensive by significant multiples of comparable passively managed and actively managed alternative funds in the same investment style. According to Laabs, the plan's participants would have received the exact same portfolio management services at a lower cost if the defendants had chosen the other investment options. She alleges that the defendants' failure to consider materially similar but cheaper investment options cost its participants over $2.6 million.

In *Albert*, the Seventh Circuit affirmed the dismissal of a nearly identical investment management claim. The court noted that "[t]he fact that actively managed funds charge

---

[4] It's conceivable that recordkeeping services are essentially fungible, meaning that there aren't meaningful differences in services provided by various companies. If that's true, an allegation to that effect, supported by specific data, might suffice under *Albert*. The complaint in this case, however, does not allege that all recordkeepers provide more or less the same services.

7

Case 1:20-cv-01534-WCG-SCD   Filed 11/09/22   Page 7 of 14   Document 51

higher fees than passively managed funds is ordinarily not enough to state a claim because such funds may also provide higher returns." *Albert*, 47 F.4th at 581 (citing *Smith*, 37 F.4th at 1165). Again relying on the Sixth Circuit's decision in *Smith*, the Seventh Circuit determined that the Supreme Court's decision in *Hughes* "does not require a radically different approach to claims alleging excessive investment-management fees." *Albert*, 47 F.4th at 581–82. The court held that the plaintiff's allegations—that the defendants failed to consider materially similar and less expensive alternatives to the plan's investment options—were "threadbare" and that the complaint did not include "more detailed allegations providing a 'sound basis for comparison.'" *Id.* at 582 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).

Laabs' investment management claim relating to the defendants' selection of high-cost investment options is indistinguishable from the investment management claim dismissed in *Albert*. *Compare* the complaint here, ECF No. 1 ¶¶ 126–54, *with* the amended complaint in *Albert*, 20cv901, ECF No. 20 ¶¶ 169–96. Like the plaintiff in *Albert*, Laabs relies on tables comparing the plan's actively managed investment funds to cheaper alternatives. However, the difference in cost alone is not enough to support a duty of prudence claim, and the complaint does not contain any more detailed allegations raising an inference of imprudence based on the selection of investment options. Indeed, the complaint here contains the exact same threadbare allegation deemed insufficient in *Albert*: "Defendants failed to consider materially similar and less expensive alternatives to the Plan's investment options." ECF No. 1 ¶ 148. Given those similarities, it is unsurprising that Laabs' response to the defendants' motion for reconsideration does not attempt to defend her high-cost investment management

8

Case 1:20-cv-01534-WCG-SCD   Filed 11/09/22   Page 8 of 14   Document 51

claim. *Albert* makes clear that this court should dismiss Laabs' high-cost investment management claim.

Second, Laabs alleges that the defendants failed to follow a prudent process in selecting Prudential's GoalMaker Asset Allocation Service. GoalMaker is an optional asset allocation service that guides participants to a model portfolio of investments based on the participant's retirement goals and rebalances the participant's portfolio on an ongoing basis to ensure it stays on target. According to Laabs, GoalMaker was designed to steer participants' retirement savings to investment options that paid excessive investment management fees and kickbacks to Prudential and mostly excluded low-cost index funds that didn't pay fees to Prudential. Specifically, GoalMaker invested about $25 million—nearly 17% of the plan's total assets— in a stable value fund managed by Prudential, the Prudential Guaranteed Income Fund. Laabs alleges that fund charged highly inflated fees compared not only to competitors but to the fees Prudential charged to its other clients. As Laabs sees it, a prudent fiduciary would not have selected such a fund.

Although *Albert* did not involve an asset allocation service claim, it did address a duty of prudence claim regarding the fees paid to one of the plan's service providers. The plaintiff in *Albert* alleged that the plan was imprudent because it paid excessive service fees to its investment advisor. *See Albert*, 47 F.4th at 575–76. The plaintiff further alleged that the investment advisor did not provide any added value in comparison to other similar services and options available in the plan. *Id.* at 582. The court held that the complaint in that case failed to state a duty of prudence claim as to the fees the plan paid to the investment advisor because the plaintiff did not "explain why the fees [the investment advisor] charged were excessive and unreasonable in comparison to other service providers." *Id.* "This claim is

9

particularly thin," the court added, because the plaintiff did not "provide any basis for comparison between the fees paid to [the investment advisor] and fees paid to other service providers." *Id.* (citing *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020)).

The analysis in *Albert* concerning high-cost funds and investment advisor services suggests that this court should dismiss Laabs' asset allocation service claim. The GoalMaker asset allocation service, like an investment advisor service, is a specific service offered in the plan that guides participants to certain investment options. Laabs alleges that the defendants should have replaced the high-fee GoalMaker funds with more of the reliable, low-fee Vanguard index funds already in the plan's investment menu. In *Albert*, the Seventh Circuit emphasized that a plaintiff does not state a plausible duty of prudence claim when she merely alleges that a plan offered high-cost investments when low-cost investments were available. The court made clear that the question of whether an ERISA plaintiff put forward an appropriate comparator—that is, a "meaningful benchmark"—is not a fact issue that necessitates discovery, but rather is a threshold issue that must be addressed at the pleadings stage. *See Albert*, 47 F.4th at 581–82. Thus, Laabs' reliance on *Parker v. GKN North American Services, Inc.*, is misplaced, as the court in that case found that the selection of suitable comparators was "a fact-intensive inquiry that is not appropriate for resolution on a motion to dismiss." *Parker v. GKN N. Am. Servs., Inc.*, No. 21-12468, 2022 WL 3702072, 2022 U.S. Dist. LEXIS 154358, at *9 (E.D. Mich. Aug. 26, 2022). Absent more detailed allegations comparing the two investment options, the difference in cost does not raise an inference that the defendants engaged in an imprudent process when offering the GoalMaker Asset Allocation Service.

Third, Laabs alleges that the defendants breached their duty of prudence by offering the Prudential GIC, a stable value investment, because it had excessive spread fees and lacked diversification. Laabs contends that the defendants should have selected the less expensive but identical Benchmark GIC. According to Laabs, the Prudential GIC cost over $1.6 million more than the Benchmark GIC in excess spread fees from 2014 to 2018, and on that basis alone it should have been removed from the plan.

Although *Albert* did not involve a stable value fund like the Prudential GIC, its analysis concerning high-cost actively managed funds suggests that this court should dismiss Laabs' stable value claim. A stable value fund, like a high-cost actively managed fund, is a specific plan investment option. In *Albert*, the Seventh Circuit reiterated that merely alleging that a plan failed to consider a materially similar and less expensive investment option is not enough to state a duty of prudence claim. The complaint in this case alleges merely that the Benchmark GIC was a materially similar and less expensive stable value fund than the Prudential GIC. Absent more detailed allegations comparing those investment options, the difference in cost does not raise an inference that the defendants engaged in an imprudent process when selecting the Prudential GIC stable value fund.

## II. Duty to Monitor Claims

In Counts III and IV, Laabs asserts that the defendants breached their duty to monitor other fiduciaries with respect to recordkeeping and administration fees and investment management fees, respectively. Laabs concedes that her duty to monitor claims are wholly derivative of her duty of prudence claims. *See* ECF No. 48 at 10. Because I recommend the court dismiss Laabs' duty of prudence claims, I recommend the duty to monitor claims be

dismissed as well. *See Albert*, 47 F.4th at 583 (citing *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)).

### III. Leave to Amend

Laabs has requested leave to submit an amended complaint if the court dismisses her original complaint. The defendants oppose the request for leave to amend for two reasons. First, according to the defendants, the request does not comply with the court's local rules because Laabs didn't attach a copy of her proposed amended complaint or explain what specific changes she would make. Second, the defendants argue that leave should be denied because Laabs chose to stand on her original complaint in the face of *Albert* and the defendants' motion for reconsideration.

"A party seeking to amend a complaint after the filing of a responsive pleading must have the consent of the adverse party or must move for leave to file the amended complaint." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (citing Fed. R. Civ. P. 15(a)). "Leave to file 'shall be given freely when justice so requires.'" *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (quoting Fed. R. Civ. P. 15(a)). "Although leave to file a[n] . . . amended complaint should be granted liberally, a district court may deny leave for several reasons including: 'undue delay, bad faith[,] or dilatory motive[,] . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Dubicz*, 377 F.3d at 792 (quoting *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002)). "Delay, standing alone, may prove an insufficient ground to warrant denial of leave to amend the complaint; rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *Dubicz*, 377 F.3d at 792 (quoting *Park*, 297 F.3d at 613).

I conclude that Laabs should be permitted leave to file an amended complaint. Laabs has sufficiently demonstrated that justice requires allowing her to file her first amended complaint. Laabs seeks leave to amend to respond to the *Albert* court's desire for further contextualization of her duty of prudence claims. Although she has not attached a copy of the proposed amendment to her filings, Laabs indicates that she is ready and able to file to do so, noting that her lawyer has filed amendments in light of *Albert* in other, similar cases pending in this district. Based on the amended complaints in those cases, as well as Laabs' statements here, it seems clear the proposed amendment would not include any new or additional claims. Rather, according to Laabs, it would include additional factual allegations that the Seventh Circuit deemed lacking in *Albert*. It is reasonable given those unique circumstances to allow Laabs to supplement her pleadings.

Moreover, the defendants have not identified any good reason why leave to amend should be denied. Laabs did not waive her right to amend by attempting to first defeat the defendants' motion for reconsideration. In her response to that motion, Laabs argues that *Albert* does not provide grounds to reconsider this court's prior ruling and that, even if it did, the current pleading survives under *Albert*. Although I disagree on both points, I don't believe she should be punished for pursuing that reasonable strategy—after all, lawyers regularly argue in the alternative. Thus, while allowing Laabs to amend her pleadings will delay this matter, I do not find that delay to be undue or that the delay will significantly prejudice the defendants.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** the defendants' motion for partial reconsideration, ECF No. 46; **GRANT** the defendants' motion to dismiss

13

plaintiff's complaint in its entirety, ECF No. 9; and **GRANT** the plaintiff leave to file an amended complaint.

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 9th day of November, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge