UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

GENNA B. LAABS, individually,
and as representative of a Class of
Participants and Beneficiaries of the
Faith Technologies Incorporated
401(k) Retirement Plan,                          Case No. 1:20-cv-1534-WCG

      Plaintiff,

v.

FAITH TECHNOLOGIES
INCORPORATED et al.,

      Defendants.

## PLAINTIFF'S PARTIAL OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS, AND IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff, Genna B. Laabs ("Plaintiff"), by and through her counsel, Walcheske & Luzi, LLC, respectfully files this partial objection in response to the Magistrate's Report and Recommendation to Grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 73) ("*Magistrate Rep.*").[1] Plaintiff believes that based on her allegations in the Amended Complaint and the Magistrate's reasoning in two previous, parallel cases, Plaintiff's allegations concerning comparator retirement plans support an inference that Faith Technologies Incorporated 401(k) Retirement Plan ("Plan" or "Faith Tech Plan") participants paid higher recordkeeping and administrative ("RKA") fees than the average retirement plan participants fees for similarly-sized plans. However, to the extent that the

---

[1] Plaintiff is not objecting to the Magistrate's Recommendations concerning her investment fee claims involving the Prudential GoalMaker service and Prudential Guaranteed Income Fund (GIF) in Counts II and IV of the Amended Complaint, but only to Counts I and III concerning RKA fees.

Court agrees with the Magistrate concerning the inadequacy of Plaintiff's plan comparisons, Plaintiff seeks leave from the Court to file a Second Amended Complaint ("SAC") to meet the Magistrate's easy-to-fix concerns about the Amended Complaint's RKA allegations. Plaintiff has attached a Second Amended Complaint for the Court's consideration as Exhibit A pursuant to Civ. L. R. 15.

**First**. Plaintiff objects to the Magistrate's recommendation that the excessive RKA fee allegations in the Amended Complaint be dismissed for failing to state a claim. The Magistrate recommends dismissal of Plaintiff's RKA claims based on the fact that Plaintiff alleges that "[t]he comparator plans had between about 1,500 and 17,000 participants, had total assets ranging from about $300 million to $2.5 billion, and paid a total annual recordkeeping fee of $20 to $52 per plan participant." *Magistrate Rep.* at 5. The Magistrate believes that the range of comparator plans are too broad based on participant size and asset size. More specifically, the Magistrate rejects Plaintiff's comparator plans for the following reasons: (1) "[Plaintiff] says that recordkeeping services essentially are the same for all large 401(k) plans, which she defines as plans with between $100 million and $500 million in asset," *Magistrate's Rep.*, at 13; (2) "the so-called comparators vary significantly in size. The largest plan, Team Health, had nearly eleven-and-a-half times as many participants as the smallest plan, Trinity Health (17,237 vs. 1,501), and the Faith Technologies plan had fewer participants (on average 2,925) than all but two of the comparator plans," *id.*; and (3) "[b]ecause several of the comparator plans do not meet [Plaintiff's] definition of a 'large' plan, and because the plans are not similarly sized, the proposed trend line cannot be used to derive a reasonable fee." *Id.* at 13-14.

As an initial matter, Plaintiff believes that the Magistrate is correct when he observes that "[Plaintiff] does not need to describe the specific recordkeeping and administrative services received by the Faith Technologies plan and the comparator plans. In *Hughes II*, the Seventh Circuit clarified that level of specificity is not required at the pleading stage." *Id.* at 10. The Magistrate is also correct that "the allegations in *Hughes II* were arguably even more conclusory and less supported than the allegations here, and yet the Seventh Circuit found them sufficient." *Id.* at 11. Last, the Magistrate is

on point when he maintains that "Pleading that recordkeeping fees were too high, however, is not sufficient to state an ERISA duty-of-prudence claim." *Id.* at 12. Although Plaintiff agrees with this last point, that is not what Plaintiff alleged in the Amended Complaint.

On this last point, the Magistrate erred in concluding that "[u]nlike the factual allegations in *Hughes II*, the alleged facts in this case do not render it plausible that the proposed alternative fee—here $42 per participant—was a reasonable recordkeeping fee." *Id.* at 12-13. Plaintiff believes the Magistrate's criticisms do not take into account the relevant allegations in the Amended Complaint. First, Plaintiff specifically alleges in the Amended Complaint that *participant numbers* are the primary driver of RKA fees, not *asset size*, and so, asset size should be largely irrelevant. ECF No. 54, ¶ 43 ("All else being equal, the more participants a plan has, a recordkeeper will be able to provide a lower fee per participant to provide identical RKA services to maintain the same profit margin rate."). Second, with regard to participant size, the fact that two smaller plans pay significantly less in RKA fees than the Faith Tech Plan supports the inference that the Faith Tech Plan paid excessive amounts for RKA. ECF No. 54, ¶ 96. Similarly, the six larger plans also paid significantly less than the Faith Tech Plan, supporting Plaintiff's allegation that "some initial bids for the Bundled RKA services would be below the trend line and others would be above the trend line. Ultimately, a prudent plan fiduciary should be able to negotiate a Bundled RKA fee lower than the trend line such that the total RKA fee would be proximate to the trend line." *Id.* ¶¶ 101.[2]

Moreover, for the same reason that *Nohara et al. v. Prevea Clinic Inc. et al.*, Case No. 20-CV-1079-WCG-SCD, *Magistrate Report and Recommendation*, Dkt. 96 (E.D. Wis. July 21, 2023) (attached as Exhibit

---

[2] The Magistrate maintains that "[Plaintiff's] graph also contradicts her allegation that more participants means a lower recordkeeping fee. As just one example, the Trinity Health plan had just 1,501 participants and paid $30 per participant for recordkeeping services; in contrast, the Consumers Energy Company plan had more than seven-and-a-half times the number of participants (11,320) but still paid $12 more ($42 total) per participant. See Am. Compl. ¶¶ 96–100." *Magistrate Rep.* at 14 n.4. However, Plaintiff never maintained that there was a strict, direct correlation between participant size and the RKA fee paid, but only that the "the total RKA fee would be *proximate to the trend line*." ECF No. 54, ¶ 101 (emphasis added). The two plans identified show that their RKA fees are proximate to the trend line, as alleged.

B), and *Glick v. ThedaCare Inc. et al.,* Case No. 20-CV-1236-WCG-SCD, *Magistrate Report and Recommendation*, Dkt. 72 (E.D. Wis. July 20, 2023) (attached as Exhibit C), survived motions to dismiss according to the Magistrate, so should this case with regard to the excessive RKA fee claims. In *Nohara,* Magistrate Dries found that "[w]hile I agree that the method used to arrive at these estimated per-participant fees is suspect—and would probably fail to carry the case at summary judgment—for now, the fact that plans twice Prevea's size paid significantly less than Prevea in total annual bundled RKA fees nudges plaintiffs' claim that Prevea Plan participants paid higher fees over the plausibility line." *Nohara*, Dkt. 96, at 7. Similarly, in *Glick*, the Magistrate stated that "[i]t remains unclear how Glick came up with some of his numbers, particularly the total recordkeeping and administrative fees he says the ThedaCare plan paid Transamerica each year. If Glick had presented the same evidence in response to a summary judgment motion, I would grant the motion. However, the pleading stage is not the time to attack the source of a plaintiff's allegations." *See Glick*, Dkt. 72, at 12.

All of the Magistrate's criticisms of Plaintiff's numbers and comparators fall squarely within this language of *Nohara* and *Glick* noted above. "[A]rgument regarding the sufficiency of the comparator plans is premature. At the pleading stage, plaintiffs should not be sent packing for not finding the perfect set of comparators without any access to discovery tools." *See Nohara*, Dkt. 96, at 7-8. Furthermore, dismissing this the RKA claims in this case is against the weight of cases that the Magistrate himself cites in both *Nohara* and *Glick* and "[d]enying [Defendants'] motion to dismiss would conform with an emerging pattern in the Seventh Circuit. Similar complaints around the circuit have survived motions to dismiss with nearly identical allegations." *See Nohara*, Dkt. 96, at 9-10 (citing *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022); *Mazza*, 2023 WL 3558156; *Lucero v. Credit Union Ret. Plan Ass'n*, 2023 WL 2424787 (W.D. Wis. Mar. 9, 2023; *Tolomeo v. R.R. Donnelley & Sons*, 2023 WL 3455301, at *4 (N.D. Ill. May 15, 2023)).

The Magistrate nevertheless maintains that "[c]ourts may permissibly question a plaintiff's selected comparators at the pleadings stage of litigation," and that "[Plaintiff's] own allegations—not

a factual dispute—show that her selected comparator plans do not provide a sound basis for comparison." *Magistrate Rep.* at 13. However, Plaintiff's comparator plans do provide a sound basis for comparison when the focus is on the participant size of plans and on the trend line set out in the graph in the Amended Complaint. ECF No. 54, ¶ 98. In short, because this case is a similar case to *Nohara* and *Glick*, with materially identical allegations, Plaintiff's Amended Complaint should likewise survive Defendants' motion to dismiss with regard to her excessive RKA claims.

**Second**. In the alternative, even if the Court is inclined to adopt the Magistrate's recommendation and concludes that Plaintiff has not yet pleaded a sound basis for comparison with regard to RKA fees, these issues are easily fixed through the filing of a Second Amended Complaint ("SAC"). As far as filing a SAC, the Magistrate finds that "[b]ecause Plaintiff has already amended her complaint once, and because she has not requested leave to amend again, he "recommend[s] that this action be dismissed with prejudice." *Magistrate Rep.* at 19. Plaintiff nevertheless requests the she be given leave to address the Magistrate's concerns, which can be readily satisfied through filing the attached SAC.

> This Court has recently set out the proper standard with regard to amending a complaint:
>
> After the opportunity to amend the pleadings as a matter of course has passed, a party may amend a complaint only with the consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). *Generally, motions to amend pleadings are treated favorably under Rule 15's liberal amendment policy. Id. Leave to amend should be "freely given,"* absent considerations such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

*Nohara v. Prevea Clinic Inc.*, 2022 WL 1504925, at *1 (E.D. Wis. May 12, 2022) (emphasis added). This Court went on to permit a *Third* Amended Complaint in the *Nohara* matter even over the Defendants' futility and undue prejudice arguments and even though it was the fourth version of the complaint:

> Defendants also assert that the proposed amendment would be futile and that Plaintiff's undue delay in seeking amendment is prejudicial. An amendment is futile if the amended pleading would not survive a motion to dismiss. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). But "[u]nless it is *certain* from the

face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). In this case, the Court is not certain that any amendment would be futile. *Id.* at *2 (emphasis in original). Given Rule 15's liberal amendment policy, the Court granted the plaintiff's motion to amend in *Nohara. Id.*; *see also Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (stating that leave to file a second amended complaint should be granted liberally).

Likewise, this holding in *Nohara* should apply equally here with regard to granting leave to the amend. Plaintiff's attached SAC would in no way be futile, as it addresses specifically each of the Magistrate's concerns in detail, including the asset size and participant size of the comparator plans and a further explanation of how the comparator plans provide a sound basis of comparison to the Faith Tech Plan. *See* Ex. A, Second Amended Complaint, ECF No. 74-1, ¶¶ 88-91 (narrower plan comparisons based on participant and asset size); and ¶¶ 92-111 (further elaboration on the basis for comparison between Faith Tech Plan and comparator plans).

Not only is the SAC not futile, but it is also not unduly prejudicial to Defendants, as the proposed amendment would not include any new or additional claims, and in fact, narrows the action to just the excessive RKA claims. Although it is true that this case has been pending for almost three years, there has been no discovery and any delay in the proceedings is of no fault of Plaintiff. Rather, because "[p]art of the reason that this case has weathered so many dismissals and amendments is that the pleading standard for ERISA has evolved drastically since the case's initial filing in July 2020." *See Nohara*, Dkt. 96, at 3. Similar to *Nohara*, this case was filed in October 2020. ECF No. 1.

Furthermore, the latest clarification of the relevant pleading standard occurred in March 2023 when the Seventh Circuit decided *Hughes v. Northwestern Univ.*, 63 F.4th 615 (7th Cir. 2023), while the Amended Complaint was filed in December 2022. ECF No. 54. Thus, if the Court decides to adopt the Magistrate's Recommendations, because of Rule 15's liberal amendment policy that provides that leave to amend should be "freely given," and the because there is a lack of futility and undue prejudice,

the Court should grant leave to Plaintiff to file the attached SAC to specifically and solely address the concerns that the Magistrate laid out with regard to the Amended Complaint.

Last, the fact that Plaintiff has not responded to Defendants' argument that she has had ample time to replead, *Magistrate Rep.* at 19, should not be held against Plaintiff. Plaintiff believed, and still believes, that the Amended Complaint states plausible claims to relief. With regard to plaintiffs in general focusing on the current complaint in seeking to defeat a motion to dismiss and not seeking to argue for amendment at the same time, Magistrate Dries has previously found that the ability to file an amended complaint should not be waived in such circumstances. *See Laabs v. Faith Technologies, Inc.*, Case 1:20-cv-01534-WCG-SCD, *Magistrate Report and Recommendation*, Dkt. 51, at 13 (E.D. Wis. Nov. 9, 2022) ("[Plaintiff] did not waive her right to amend by attempting to first defeat the defendants' motion . . . . I don't believe [Plaintiff] should be punished for pursuing that reasonable strategy."). Same too here. The new pleading standard announced by *Hughes II* in March 2023 came out *after* the Amended Complaint in December 2022, and so Plaintiff should be given an opportunity to replead under this new pleading standard to meet the concerns raised by the Magistrate in his Report and Recommendation. This is especially so given the ease with which Magistrate's concerns can be addressed in a Second Amended Complaint. Plaintiff therefore respectfully requests that the Court grant Plaintiff leave to file the attached SAC if the Court adopts the Recommendation of the Magistrate with regard to the excessive RKA fee claims.

## **CONCLUSION**

For all the above reasons, Plaintiff objects to the Magistrate's Report and Recommendation and respectfully requests that Defendants' motion to dismiss be denied. In the alternative, Plaintiff respectfully requests that the Court grant leave for Plaintiff to file the attached Second Amended Complaint to meet the easy-to-fix concerns set out by the Magistrate in his Report and Recommendation.

Dated this 11th day of September, 2023

          WALCHESKE & LUZI, LLC
          Counsel for Plaintiff

          **s/ *Paul M. Secunda***
          James A. Walcheske, State Bar No. 1065635
          Scott S. Luzi, State Bar No. 1067405
          Paul M. Secunda, State Bar No. 1074127

WALCHESKE & LUZI, LLC
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: psecunda@walcheskeluzi.com